UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DIANNE FERRY,                )
                             )
         Plaintiff           )
                             )
v.                           )    No. 2:10-cv-211-GZS
                             )
PRUDENTIAL INSURANCE         )
COMPANY OF AMERICA,          )
                             )
         Defendant           )

*MEMORANDUM DECISION ON PLAINTIFF'S MOTION FOR RECONSIDERATION*

The plaintiff asks for reconsideration of my memorandum decision dated October 28, 2010 ("Memorandum Decision") (Docket No. 14), denying her motion to conduct discovery in this case arising under the Employment Retirement Income Security Act ("ERISA"). She contends that the denial was "based on a manifest error of fact" because it states that she did not allege that the defendant suffered from a structural conflict of interest, as that term is defined in ERISA case law, a necessary prerequisite for granting a motion to conduct discovery in this case. Plaintiff's Motion to Reconsider ("Motion") (Docket No. 17) at 2. I grant the plaintiff's motion for reconsideration.

The plaintiff's assertion that "[t]he structural conflict is quite precisely alleged in the Complaint[,]" *id.*, illustrates the problem with the plaintiff's initial motion. It is the moving party's burden to demonstrate, in the motion and the materials attached or in the materials to which a specific reference is made, the existence of each of the legally necessary elements that entitle him or her to the relief sought. It is not the court's role to search through all of the filings

1

in the case in order to determine whether each of these element appears somewhere other than in the motion. *See, e.g., Adams v. Dyer*, 223 Fed. Appx. 757, 762 n.4, 2007 WL 431511, at **3 n.4 (10th Cir. Feb. 9, 2007). The plaintiff did not provide this information in her initial motion, as I noted in the memorandum decision. Memorandum Decision at 2.

Contrary to the plaintiff's further contention, references in her initial motion to the defendant's "evaluation and denial of [her] claims" and its alleged breach of "its fiduciary duty to seek objective assistance in evaluating her claim" when it had "a recognized financial interest in the outcome of the referral" to other providers for evaluation, Motion at 3 (emphasis omitted), did not sufficiently present an argument that the defendant had a structural conflict of interest in handling the plaintiff's claim. Nor may the plaintiff meet her obligation to make a clear presentation of the factual and legal elements underlying the relief sought in her motion via the defendant's subsequently-filed opposition to her motion. *Id.*

Now that the plaintiff has provided what was missing from her initial motion, however, I conclude that the defendant has not distinguished this case from that presented to Judge Kravchuk in *Achorn v. Prudential Ins. Co. of Am.*, Civ. No. 1:08-cv-125-JAW, 2008 WL 4427159 (D. Me. Sept. 25, 2008), in either of its memoranda. Its opposition to the motion for reconsideration addresses only the merits of the initial motion, rather than the procedural insufficiency that was the basis of my initial denial. Prudential's Response in Opposition to Plaintiff's Motion to Reconsider (Docket No. 18).

Noting that, even with an allegation of a structural conflict of interest, an ERISA plaintiff must also establish "some very good reason . . . to overcome the strong presumption that the record on review is limited to the record before the administrator[,]" *Achorn*, 2008 WL 4427159 at *3 (citation omitted), Judge Kravchuk held that discovery about potential bias in Prudential's

decision-making based on the independent medical review or referral firms that it used in that plaintiff's case was appropriate, for the following reasons:

> The information [sought], after all, explores the existence of a potential procedural bias where it is already known that a structural conflict exists. In its fiduciary capacity as a claims administrator, Prudential has an obligation to seek out objective assistance when it decides that a referral for a file review or an independent medical examination is needed. Despite Prudential's fiduciary duty to refrain from biased decision-making, however, these review or referral firms do not owe any fiduciary duties to plan beneficiaries and they also serve a market in which many of the customers are like Prudential, customers with a recognized financial interest in the outcome of any independent review or examination that is conducted by doctors within the referral networks. How these firms go about developing and maintaining networks of physicians or other medical experts in order to serve *their* customers is therefore very relevant to the existence of procedural bias. If Prudential is utilizing third-party service providers whose services routinely result in claim denials, that is something that is likely to be understood by Prudential and would be highly suggestive that the referral process is itself biased. . . . In this context, it is only fair that a claimant be able to obtain some information about the third-party agents who make referrals within the medical community that the fiduciary relies upon or adopts to support the denial of benefits, at least in cases where the fiduciary operates under a structural conflict of interest and has relied on the services and referrals of its own third-party agents to deny benefits.

*Id*. at *6 (emphasis in original).

The defendant's responses in this case, Docket Nos. 9 and 18, do not address the questions the plaintiff presented as those on which she seeks discovery "closely tracking the discovery that was permitted in *Achorn*." Plaintiff's Motion to Conduct Discovery (Docket No. 8) ("First Motion") at 4. In *Achorn*, Prudential was ordered to disclose the following to the plaintiff:

> 1. The rate and amount of compensation paid to the two third-party firms in question for their services, including compensation for the services of any other third-parties engaged by them, in turn, to review Achorn's claim for benefits.

3

>   2. The total number of claims administered by Prudential under the subject MBNA Group Long Term Disability Plan in 2005, 2006, 2007, and through the second quarter of 2008.
>
>   3. The total number of claims referred to in question 2 that were referred to the identified third-party firms, with separate figures provided for each firm.
>
>   4. The total number of claims referred to in question 3 that resulted in a recommendation by the third-party reviewer that the benefits be denied or terminated.
>
>   5. The total number of claims referred to in question 4 that actually resulted in a denied claim.

*Achorn*, 2007 WL 4427159, at *6-7. In this case, the plaintiff seeks the same information, plus an "inquir[y] about the reviewing doctors' compensation and track record of opinions regarding disability during the five years preceding the date of disability[,] to wit, 2005-2009." First Motion at 4.

The plaintiff has not provided any reason to expand on the scope of the discovery permitted in *Achorn* by seeking specific information about each of the reviewing doctors' individual compensation and "track record." The effect of such targeted discovery might well be to discourage physicians from providing such services at all. The plaintiff must demonstrate an additional "very good reason," specific to her claim or to the doctors involved in the third-party review of her claim, before this further level of discovery will be allowed. She has not done so in this case.

The plaintiff also has not specified the manner in which she wishes to undertake this discovery. Because I will strictly limit the means of discovery and the time involved, *see generally Grady v. Hartford Life & Acc. Ins. Co.*, Civil No. 08-339-P-H, 2009 WL 700875, at *5 (D. Me. Mar. 12, 2009), and because the plaintiff has now adequately supported her request for discovery, I grant her motion for reconsideration.

4

The discovery in this case will be limited to one set of up to 10 interrogatories, having no subparts, and one set of document requests on the following subjects, to be served on the defendant by the plaintiff no later than 10 calendar days following the date of this decision:

1. The rate and amount of compensation the defendant paid to the two referral service providers involved in the plaintiff's claim, including compensation for the services of any parties engaged by them to review that claim.

2. The total number of claims administered by the defendant under the applicable disability plan during the three and one half years preceding the date of the plaintiff's claim.

3. The total number of claims referenced in paragraph 2 that were referred to each of the two referral companies involved in the plaintiff's claim.

4. The total number of claims reference in paragraph 3 that resulted in a recommendation by the third-party reviewer that benefits be denied or terminated.

5. The total number of claims reference in paragraph 4 that actually resulted in a denied claim.

As so limited, the plaintiff's motion for reconsideration is **GRANTED.**


Dated this 30th day of January, 2011.


          /s/ John H. Rich III
          John H. Rich III
          United States Magistrate Judge